Godiva, Mr. Reich. Thank you, Your Honor. My name is Mark Mitchell-Reich for Appellant Aradel. The question in this case is whether David Moransky suffered a constant injury in fact, but he was handed a receipt in the first six and last four digits of his 16-digit credit card number. Before you get to his standing, can I ask you a question about your client's own standing? No. Here's the way I analyze not the entire case, but aspects of this appeal. Mr. Isaacson chose not to opt out, became a class member, reaped some benefit from the class to the tune of 80-something dollars, and is now on appeal in part arguing that Mr. Isaacson lacked Article III standing as a plaintiff, right? Mr. Moransky lacked Article III standing as a plaintiff. If he wins on that claim, how is he benefited? Well, I think he is benefited by that, but I also want to answer the antecedent question of whether this is relevant. He's benefited in a number of ways by wiping out a class judgment that he chose to get into and that now deprives him of a financial benefit that the settlement gave him. Yes, we think this class improperly extinguishes the claims of many class members who may have suffered actual injury from violations more severe than what was— Well, he objected to the settlement, right? He thought it was not generous enough, right? Yes, sir. And so if the settlement is vacated by virtue of the jurisdictional objection, he's getting exactly what he wants. Isn't that right? His claim is not released by the settlement, and he can pursue a claim for greater relief. Isn't that right? Yes, that's exactly right, Your Honor. And I think the more fundamental point is that we are standing at this point in the case, is that Mr. Isaacson plainly had standing to appeal the district court's judgment on the merits. He believes the settlement is not generous enough to him. Your Honor's concurrence recognizes that. Once this case was issued before this court, this court had appellate jurisdiction over the merits. This court had an independent obligation to analyze whether the district court had standing. Exactly. It doesn't even matter if your client has standing for our purposes. Exactly, because this court would have an obligation to resolve the question even if nobody raised it. And I think a good illustration of this is the Supreme Court's decision in Frank v. Gauss which remanded the case to consider standing even though none of the named parties there had raised the issue. But I want to get to Mr. Moransky's standing because under Spokio, the Supreme Court made very clear that a plaintiff cannot automatically establish articles of free standing simply by alleging that the defendant violated his statutory rights. He has to demonstrate either that the defendant's violation included actual harm or a material risk of harm on the plaintiff. And Moransky hasn't alleged, let alone shown, that he satisfies either of those requirements. Well, now, let's talk about the procedural posture a little bit. As Judge Pryor noted, your client objected at the fairness hearing, right? Yes, sir. But at that point, the pleadings were closed. The complaint had been filed. The answer had been submitted. And so no one challenged Article III standing. Before the fairness hearing, no one asked the plaintiff, the class plaintiff or the class as a whole, to submit an amended complaint with more detailed allegations. What happens if we find that there was no Article III standing for the named plaintiff? Does it go back with the opportunity to file an amended complaint? I think if this court finds there's no Article III standing, the judgment has to be vacated, and the proper disposition would be the case dismissed without prejudice because there's no jurisdiction. Moransky would be free to attempt to refile his complaint with more fulsome allegations. I think any attempt to do so, though, would be futile. How do you know that? Because even at this late date, on bond-free hearing, he's attempted to introduce much too late in the case what he believes are the strongest factual allegations in support of his claim of risk of injury, and none of them come close to demonstrating, to carrying his burden of showing that there was a certainly intended risk that someone was going to find his receipt, that identity people get his receipt, they would somehow deduce the remaining six digits of his credit card number, end the expiration date, and then use it to commit identity theft. None of his documents speak to that at all. Does he have to wait until someone steals his identity and steals his identity before he has a fact of violation? No, Your Honor. Plaintiffs could sue for a fact of violation if there were a material risk of harm from the receipt itself. And I think a good example where that was potentially the case is in the Jeffries case. There's a much more severe fact of violation that involved printing all 16 digits of his card number as well as the expiration date. And without conceding the point, I think in that case the plaintiff at least had a much easier time alleging that there was a How many numbers have to be on the credit card receipt in order for there to be a risk of harm that would be sufficient to convey standing on Mr. Dr. Moransky? I think there are a few questions. This is a case-by-case question. It depends on the plaintiff's allegations. If a plaintiff can come forward with plausible allegations, concrete specific facts, as this Court has required in the Mississippi tribe of Indians or the town of Ponce Inlet, specific concrete facts substantiating that they face a material risk of harm from all of the receipts. I'm not sure I understand. Did he make any concrete allegations? He made none at all. All that his complaint says about risk, literally all, is in paragraphs 1 and 62 of the complaint, he says that he posed an allegation of identity theft. And are those conclusory allegations, typically enough? That's exactly the type. Right there are conclusory allegations. Well, why did President Bush say that the purpose for the statute is to avoid identity theft before it takes place? Yes, the statute is unquestionably designed to reduce the risk of identity theft, but the core holding of Spokio, the Supreme Court said this expressly, that a statute designed to decrease the risk of a harm occurring doesn't necessarily confer standing any time it's violated. The plaintiff needs to show that the specific violation of that statute inflicted harm or a material risk of harm. Indeed, the Court gave examples. Which you're interpreting to mean a substantial risk. I think the best reading of the Court's opinion is that a material risk of harm needs to meet the ordinary eminence requirements for Article III standing, which is a certainly impending risk of injury, and the Court described the risk needed to satisfy its requirements. Is it beyond plausibility that later in the case an expert could testify that when you print six numbers on a credit card receipt, you have an untruncated credit card receipt, and that in and of itself increases the possibility that a thief could obtain your identity and use your identity? I think that there's nothing in the record. Moransky made no allegation even of what the facts would be that an expert would. He's got to put in his complaint, I can get an expert who would testify that my risk of harm has increased? He would need to mention the expert in the complaint, but he would have at least needed to allege the facts that an expert would later come in to testify in support of that would show that there was a concrete risk. And I note that he reported to an expert report, and even that expert report doesn't give any facts that would support a nonspeculative risk of injury. Plead the missing allegation for us. You don't have to introduce it. What should he have said in the complaint? For example, if the receipt had not been returned to him, but to some third person and he knew of that, and as a result, he brought up an identity theft insurance policy because he was concerned about the risk of being a victim of identity theft at that point. So under your position, unless he pleads that the receipt wasn't returned to him, even all ten digits, that's not enough? I think that it's hard to imagine with a violation of this nature, a 6-4 violation, given how many digits are not left and how little information the first six digits reveal, that they're just the IIN, as my opponents have now conceded. They just revealed the name of the bank and other card information. I think it's hard to imagine how anyone could plead that that creates a nonspeculative risk of harm. Because all you're being given back is the same thing that you were given back when your credit card was returned to you at most, right? Yes, that's exactly right. And the retailer could entirely lawfully have printed all of that information on the card, and an identity thief, certainly an identity thief capable of a brute force cryptological attack, could easily look up the numbers that correspond to that. What if he's not aware of all that until five years after the point of sale? He doesn't have a fact to claim then, does he? Well, I think that, first of all, Article III standing is a hard floor. I think that whether Congress has enacted a statute that can possibly be enforced is a question for the political branches. And I think that it's hard, of all the dozens of cases alleging violations just like this, with classes representing literally millions of persons, no one has ever run into a single example in which a receipt like this has led to any harm. Identity theft, someone deducing the remaining numbers. Wouldn't that support the position that Congress itself identified the harm with the printing of an untruncated credit card receipt? Congress has decided that that subjects the consumer to a heightened or elevated risk of harm at the point of sale. I think that Congress made very clear, I think Congress was enacting a prophylactic statute that was truncating them to a point that would prevent identity theft. But that doesn't mean that Congress is saying that every violation creates material risk. Does Congress have the authority to establish the injury in the statute itself? Congress has that authority to do that, doesn't it? Congress can define the injury, but to do so it would need to, and I think Justice Kennedy's opinion in Lujan and I would also point to Judge Sutton's opinion in Coff are very instructive on this point. Congress needs to specifically identify the injury and articulate the chain of causation. It needs to make findings. Well, Congress has identified the injury as a heightened or elevated risk of identity harm as soon as you receive an untruncated credit card receipt. But we know that Congress didn't think that every violation of the statute presented a material risk of harm because in the Clarification Act, in response to suits very similar to this, Congress said, A, the harm is identity theft. That's the harm the statute was designed to prevent, harm to someone's credit or identity, and B, that it specifically disapproves of suits alleging technical violations of FACTA. So we know that Congress did not think that any time more information is revealed in the law allows someone to suffer harm or even a material risk of harm. I don't understand that. If the purpose for the statute is to prevent identity theft before it takes place, then that's inconsistent with your argument, it seems to me. I agree. Congress is allowed to legislate in a hypervigilant way, but that doesn't mean that that automatically confers standing on anyone who has a statutory violation. And I would also just note, if I may, that this is a statute that can be enforced in state court where courts are not bound by the limits of Article III. 1681P gives concurrent jurisdiction to state courts, and it also gives civil enforcement authority to the FTC, and the FTC is free to bring civil enforcement actions under its parens patriae standing. So this does not render the statute unenforceable even as to these technical violations. The Chief has given me permission to take you a little bit beyond your time. So what is your take on Justice Thomas' public rights versus private rights distinction? I think it's foreclosed. I think those are separate opinions. There was actually a dissent in Frank D. Gauss, so no other justices signed on to it. I'm not asking you whether it's binding. I'm asking you what your take is on it. I think that it's foreclosed by current Supreme Court law and the law of the circuit. The Supreme Court supplied normal Article III requirements even in— You're not going to answer the question? Well, I think it's a historical matter. I think it's highly questionable whether that's correct. I think that the Supreme Court has rightly said that Article III has always insisted on an injury. In fact, I don't know if historical evidence— Assume for a moment that it's correct and it's the law. Yes. Well, even if it were the law, I don't think it's clear at all that this is a private rights case. What Justice Thomas seems to be contemplating is that there's a statute that specifically vests rights in an individual, actually using rights, creating language. And you can see this in the way he parses between the different claims at issue in Spokio itself. It wasn't just that the plaintiff had a cause of action. It's that it referred to them in terms of something resembling property rights. And this statute doesn't do that. It imposes a prohibition on retail rights to the people. Plaintiff, I just want to get in that I think this is clearly foreclosed in this court's decisions in Salcido. In Nick Law, the court applied Spokio to what, by any standard, would be private rights. It's certainly more than this case. And the Supreme Court's decision in Trafficante applied ordinary Article III requirements to what I think would also be a private right by Justice Thomas. Thank you. Thank you, Minister Reich. We'll give you a full three and reply or response. Mr. McDonald, three minutes. Thank you, Your Honors. Alex McDonald for Class Member James Price. Mr. Price, like Objector Isaacson, filed a claim for benefits as a result of the settlement. He had multiple purposes where apparently a non-truncated receipt was provided to him. And he, unlike Dr. Maransky, does not have all of his receipts. He doesn't know where all of those are. So he, as one of the class members, I think would have harm. And I think that that's exactly what Congress was intending when it created facts. Do we have any of the receipts in the record? I'm sorry? Do we have any of the receipts in the record? I am not aware if Dr. Maransky put his receipt in the record or not. The reason I'm asking is because up until your reply brief, everybody seemed to be talking about the first six digits, meaning the bank information, that was printed on the receipt, that the middle digits were not printed, but then the last four digits were. And in your reply brief, you seem to suggest that it's the middle digits and the last four that are being printed. Judge Baberman, Magistrate for the Northern District of Georgia, picked up on that. And so we were simply referring the Court to the interpretation of Dr. Maransky's complaint as that was interpreted by Judge Baberman. But again, because the standing wasn't challenged at the class certification stage, none of that factual development is in the record. But there was not an opportunity that was given to Dr. Maransky. Wasn't this class settlement reached in the shadow of Spokio? Yes, it was. And wasn't Spokio raised at the hearing at the District Court? Spokio was raised for the first time at the fairness hearing. Mr. Isaacson did not raise standing in his initial objection. Because Spokio hadn't been decided, right? I think Spokio had been decided by the fairness hearing, but it had not been at the time the settlement was reached, is my recollection of the history of that. And the parties were working to reach the settlement before Spokio is my understanding, correct? They were, absolutely. And so what I think the upshot would be is that the issue of Article III standing would become the only issue that parties could not factor into their settlement negotiations. I think that's exactly right, because Article III standing is the only issue that's in the Constitution. You can't evade the Constitution by settling your case before a Supreme Court decision on standing, can you? I'm not sure I fully understand the answer to your question, but let me try to answer it in this way if I could. The complaint plausibly alleged Article III standing. The parties settled in the context of We're not going to press a factual investigation into the underlying issue of standing, and so that was the basis of the settlement. But the complaint itself, I think, undeniably would have had a plausible allegation of Article III standing. And in that context, I think the settlement was reached. But, of course, I was not class counsel and I was not defense counsel. I didn't come in until later. One more question, if I may. Does the fact that the parties decided not to press the factual case of standing relieve this Court of our responsibility to consider constitutionally whether standing has been achieved? No. I think that it would elevate, as I said, Article III standing. And I guess I would leave you with this possible point. There was a protective order that was in place. No. Next up, Mr. Almeida for Godiva Chocolatier. Mr. Almeida, you only have two minutes, so you need to make it sweet. Thank you. Can parties waive standing? Can parties waive standing? So does the fact that the parties chose not to explore standing relieve us of our obligation to do so? No. But by the same token, it means there's no factual development. All right. God. But it wasn't until the following May that Spokio was actually handed down to the Supreme Court. So there was a risk, and Godiva at the time made a prudent financial and business-leading decision to settle the case given what could happen with respect to Spokio. In fact, the Supreme Court remained in the Ninth Circuit to apply the concrete and particularized standard enunciated in Spokio. Who has the burden to allege facts sufficient to confer standing? Your Honor, we believe that the plaintiff has the burden to substantiate standing in the first instance. Thank you, counsel. Thank you, Your Honor. Mr. Helicki for Moransky. May it please the Court. Michael Helicki for Dr. Moransky. I want to start off by addressing Judge Jordan's question about standards and standards. He did not object to the amount of the settlement. He objected to the notice, the request for fees, and the request for incentive. Yeah, he objected to the amount of fees, right? He objected to the request. Yeah. Well, and the amount that's being paid to your client, too, right? He objected to the request, yeah. Because every dollar that's spent either on those fees or for your client is a dollar taken away from the class, of which he's a member. Because it's a common fund. Yes. The argument made against Dr. Moransky's standing applies more squarely to his own claim. I don't think that's correct. I mean, I think we get to your client's standing no matter what in this case. My only point is, in my personal opinion, I think that Mr. Isaacson lacks standing to challenge everything. Because if everything gets wiped out, he gets no benefit, having been a class member who decided not to opt out. But as Judge Pryor said, he objected to a couple of things that, if he's right on, are going to put more money in his pocket potentially. And in my view, that suffices for his standing on a number of the claims that he's advancing, just not all of them. And that would be important because he needs to have standing for us to have a case or controversy on appeal, right? Someone has to have standing, yeah. Well, I mean, the objector, the appellant, has to have standing to appeal, right? Yes. My point, Your Honor, is that the standing objections he's making to Dr. Moransky apply foursquare to his own claim. So he destroys the settlement. He also destroys his own ability to proceed. No, but look at it this way. For standing purposes, we don't get to the merits of the dispute. And so if he's wrong about your client's Article III standing, and we agree with you independently that Dr. Moransky had Article III standing, we reach the other two merits-based issues. And if Mr. Isaacson prevails on those, he gets a benefit because the case goes back down and you tell the district judge you've got to rejig everything on the settlement because the attorney's got too much money or Dr. Moransky got too much money, and so you're going to have to redistribute the pie at another fairness hearing. And so at least that's the way I analyze the issue. Maybe I'm off base on it. The first six digits of a credit card account number reveal a number of private details about the account itself. The card types are brand, car model, platinum, gold, commercial. Are there any airlines programs associated with it? Just so I'm clear, how are those private? I mean, like, I should have brought my wallet with me, but I mean, mine, I'll confess, is a Delta, Amex, SkyMiles, issued by whatever bank. I can't remember. You can see it on the face of the card. Yes, you hold the card. The identity is not going to find the card. That's always with you. So when you hand it to the merchant, they hand it back. So an identity, finding a receipt, is not going to see that. All they're going to see is these digits. But the digits, they can then use to determine what that information is. When you've got official inquiries, they can call you up, send you an email. Hey, I'm calling about the card. American Express, airline miles card. Starting with the following digits, blah, blah, blah. Did you allege that in your complaint? Did you allege that point, that factual scenario in your complaint? No. The fishing scenarios, the specific ones. Well, we allege in our complaint about the elevated risk of identity theft. It's on page 16 of the reply brief that the first six digits reveal the very information I just described. So why is your conclusory allegation in your complaint enough? It seems that the settlement was reached and rushed into in order to try to beat Spokio. But that deprived the district court of any real factual argument about whether your client had standing. It seems that all we had at the district court was these conclusory allegations. And that's really all we've got now. The settlement was rushed into, Your Honor, but the allegations in the complaint are factual. As a result of the disclosure of this information on the receipt, Dr. Moransky was exposed to an elevated risk of identity theft. That is a factual allegation. It's not a threadbare legal conclusion. It's a fact. And Lujan and also this court and MSPA claims, number one, that at the hearing stage, general factual allegations weighing standing are sufficient. Do you have to say how you're harmed, though? I think that's what we're getting at. Do you have to say how you're harmed by receiving an untruncated credit card receipt? This is how I was harmed. Is it just there was an elevated and heightened risk of identity theft? Or do you need another fact, like I had to worry about whether or not the employees at Godiva were able to figure out the rest of my credit card numbers? Do you have to add something other than I was subjected to an elevated risk of harm? Do you need anything more than that in your complaint? The short answer is he doesn't need to plead more than he did. He seemingly had an elevated risk of harm. He pleaded an elevated risk of identity theft, so a specific kind of harm. And a risk of harm is one way to satisfy Article III's concrete injury requirement. Furthermore, the other fact is Yeah, but it has to be imminent. It can't be speculative, right? It can't be speculative. And it has to be imminent, right? It's got to be actual or imminent injury, according to all the Supreme Court decisions of the last 30 years about standing. But we're talking about a future injury. We're not talking about an injury. Your client has alleged that he already was injured. His injury has to be a perspective, a risk of harm.  Doesn't that risk have to be imminent and not speculative? He alleged both a risk of harm injury and actual injury. But for the risk of harm analysis, Your Honor, the test that Spokio uses, the language Spokio uses, is material risk of harm. And that's also a material risk of harm is one way to satisfy Article III's concrete injury requirement. It's also the language used by the NICOLA decision, by this Court, by a distributable case under the Second Circuit, Kamala, the Third Circuit. The Ninth Circuit, when Spokio went back, the Ninth Circuit used the material risk standard. Here's the problem I'm having. I don't understand how the merchant returning the credit card receipt with how many ever numbers may be on it to the customer, to the credit card holder. Is any different from returning the credit card itself to the credit card holder in terms of, if that's all we know is that that receipt with that information was returned to the customer, how is that an imminent risk of injury? Because it creates a material risk of harm. I don't think imminent risk is the standard. Material risk of harm is sufficient. Well, for constitutional standing, imminent is, right? The Supreme Court in Spokio said a material risk of harm is enough. It's also used the term substantial risk of harm, which I think is the same thing. Well, it might have said that that was enough to meet the concreteness requirement, but there is a separate requirement that Judge Pryor was talking about of either actual, happening to you right now, or imminent on your doorstep. That's not a distinct requirement. Concrete, the injury has to be concrete and particularized. There's no dispute it's particularized here. We're talking about concrete. Right, and actual or imminent. Material risk of harm, actual or imminent, is not a separate requirement. It doesn't have a separate office from there being a concrete injury. You sure about that? But doesn't this language specifically say concrete and particularized and actual or imminent, not conjectural or hypothetical? I mean, that's a very specific use of the word and. It's not or. In that context, material risk stands in for or imminent or actual or imminent. Material risk is another way of saying imminent. That's the gloss that the Supreme Court has put on it, and so that's substantial risk as in other cases like Dry House and Department of Commerce. So let me ask you this because you said a minute ago that your client alleged both actual injury and a material risk of injury. Setting aside material risk for the moment, if that's a gloss, which I think you're right it is, what's the actual injury? The actual has got two parts. Number one, as a result of the disclosure of the census card information on his receipt, that prompted Dr. Maransky to hold onto it to make sure that there was no further dissemination of the information on it. Did he, did Ms. Maransky plead that? The parties conceded. Dr. Maransky, excuse me, Mr. Isaacson forcibly argued that on page 20 of his reply to the panel. Mr. McDonald said he didn't want the receipt on page 66 of the fairness hearing transcript. So they conceded these facts. So it's a concrete harm if you have to take steps to safeguard your credit card receipt to make sure that you don't get another untruncated credit card receipt and you might have grief and worry. How many other stores at Aventura Mall are able to give me a credit card receipt with more than five numbers? Would that be enough to establish that there's a concrete injury sufficient to satisfy standing? Yes, absolutely. We need to hold onto the receipt. It's no less an imposition than other harms this court has found sufficient to satisfy Article III. But don't you only need to hold onto the receipt if the release of the receipt could actually cause some harm? We know from Clapper that you can't guard against a risk that isn't a real risk and thereby manufacture your own harm in your own standing. The information on the receipt can lead to harm. One study shows a hacker armed with nothing more than the first six digits can generate a working card number and make an online purchase in as little as six seconds. So the six digits being there presents an absolute risk. Did the district court have arguments about that study and other studies to determine its view of whether that was correct? No, the district court, because Ms. Roddickson didn't swear to challenge Dr. Moransky's standing at the district court, the issue wasn't presented. Does the plaintiff only have to show standing if someone challenges it or is that a burden that every plaintiff has in every lawsuit? You have to meet the legal conclusion of standing, but the factual backing for it, the parties can, if the facts aren't contested, the district court's free to accept the fact, the uncontested representation of the parties. The answer is that you've got to show more specificity as you proceed in the litigation. What may be enough at the pleading stage may not be enough at the summary judgment stage, and what may be enough at the summary judgment stage may not be enough at trial. Exactly. That's what Lujan holds. General allegations are sufficient at the pleading stage, but later on when you put to your proofs, then you might have to put up more. I thought your answer to Judge Pryor's question would have been that at least the way things happen in Miami, we may be a little bit behind the curve. When you are given a receipt by any merchant to sign, there is usually, for example, in a restaurant, a place like Godiva, maybe not, a place for you to sign, and you get two of them, and one of them says merchant copy and the other one says customer copy, and the one you sign goes back to the merchant and you, the customer, lose control of what happens to that copy. And so, depending on the factual circumstances, if enough of a credit card number is put on a receipt that the merchant stays with, you may have a real potential problem. That doesn't speak to whether your client has it in this case, but it's not just a customer receipt that Dr. Moransky retained. It's the other receipt that's floating out there somewhere that copies can be made of. But Mr. Moransky in his complaint did not allege anything about the vendor copy. Is that correct? He's only concentrating on the harm that came because of the copy that came to Mr. Moransky. The vendor receipt is not mentioned. Can I ask you to distinguish between two things, if you can? First, the judgment of Congress under FACTA that risks to consumers can be reduced by truncating credit card numbers. And second, the judgment of Congress under FACTA that inaccuracies on a credit card report can cause harm to consumers. There's a difference between the fact that a certain amount of truncation can take risk away and every single violation of that increases the risk? I'm not sure I understand Your Honor's question. Is there any difference between Congress's statement that identity theft is a problem? Right? We know that that's true. And Congress mandated a certain truncation of receipts, right? Of numbers on receipts? Right. Can we automatically assume that Congress thought that any non-truncation in connection with that automatically introduces material risk of identity theft? It's not an assumption. Congress said that. This is key. The information that the statute requires to be masked is key information, key card information. And then when you leave it on the receipt, it gives a gateway to fees. It gives them an easy access to your information. Whatever was in the Congressional record is not something Congress necessarily said. They don't vote on that. I'm sorry. The executive committee report, Your Honor. U.S.P. Garcia said that. It's not something Congress voted on or the President signed. U.S.P. Garcia said that the place to go to find Congressional intent is the official committee reports. Shouldn't we instead go to the Clarification Act, which I think answers Judge Grant's question, no. In the Clarification Act, Congress said, whoa, whoa, whoa, whoa, whoa. Not every last violation of this statute creates a material risk of identity theft, which is what we're after. So the answer, I think, is no. And on the face of the second statute, the answer is no. Forget about committee reports. Judge Grant's question was about truncation. I understood it being truncation of the card number. The Clarification Act point says that the failure to truncate or mask the expiration date. Why would any different standard apply? Congress in its judgment after consulting experts determined that that's the fact. Would your argument be the same if Congress had mandated that credit card receipts could only have the final digit of the credit card number and Godiva had printed the final two digits of the credit card number? Would you find there that also harm was automatically shown? If Congress in its judgment after consulting experts as it did here and having hearings and reading documents determined that that's the fact, then absolutely. Congress's judgment, according to the Supreme Court in Turner v. FCC, is entitled to substantial deference. But how is that consistent with Spokio? How is that consistent with Spokio? I think Spokio certainly requires more of us as a court. It does not require a court. It doesn't perform. Spokio doesn't address Turner v. FCC, but they're completely compatible. Spokio says that there's material risk, then that can satisfy Article III. If Congress finds there's a material risk and there's no basis in the record at the pleading stage to contradict that determination, and the plaintiff pleads that he is exposed or she is exposed to that very risk, then you are satisfied Spokio. If you have it backwards, doesn't the evidence have to show that that material harm actually exists rather than someone else has to show that that material risk of harm doesn't exist? It seems that you've got the burdens mixed up on that one. No. At the pleading stage, we simply need to plead the general factual allegations, which Dr. Moransky pled the fact. That fact is 100 percent consistent with Congress's judgment. Congress's judgment has imposed substantial deference, and until we reach a stage in the case where someone puts something in the record to contradict that judgment, that's it. You've satisfied Spokio's need for pleading a material risk of harm. Can I go back to one question that Judge Newsom asked? Since he disclosed all of his banking information here today. I'm an open book. If a vendor printed a receipt that had only the last four digits, but included all of the information that Judge Newsom just ticked off, that this is a Visa card issued by this bank, it's a SkyMiles, whatever, does that violate the statute? The statute doesn't prohibit, states don't prohibit putting that information, but what's the important distinction there is that the information itself is not the same as having the six digits. The six digits plus the four digits gives us two-thirds of the way to deducing the full card number. But the six digits corresponds to American Express, SkyMiles, Platinum, and if all of that information is disclosed, that's not a statutory violation. Here's another distinction, Your Honor. You can't reverse engineer the first six digits from just knowing that information. Banks use numerous different first six-digit combinations to issue credit cards. The Bank of America has got almost 250 different combinations it uses. So by telling you, like, the name of the issuing bank or some detail about the card like that, that alone isn't going to present the same risk as disclosing more than the last five digits of the card account number. Very briefly, I'd like to address the rigid confidence issue. Counsel, you've run out of time. Oh, I'm sorry. I didn't really talk that much. Thank you very much. Thank you. Thank you for your time. Mr. Wright, three minutes. Thank you, Your Honor. I think I'd like to start with my friend's colloquy with Judge Grant. We're asked time and again where in the complaints he made, any of the factual allegations on which he's now resting his entire argument, the answer was nowhere. So therefore, he has to, if you get back an untruncated credit card receipt, he's got to wait until something happens before he files his complaint? No, Your Honor. He could have put in allegations which would be reviewed for plausibility as to how just getting the receipt posed a material risk of harm. What if the harm hadn't taken place yet? No one's got his credit card receipt. No one's used his credit card number. What if that hadn't taken place yet? We don't in any way dispute that it's possible, if it's properly alleged, for a material risk of harm to support standing, even before an actual harm has taken place. But that needs to rest on concrete factual allegations in the complaint. Well, I don't understand how you get the concrete allegations if you have to wait until a harm takes place. What if he got a credit? What if he got a credit, Dr. Moransky's receipt came back with all 16 numbers, and no one's stolen his identity? And I think if there were all 16 numbers— So he can't file a fact to claim? —a very strong argument that he has standing in that case, and he could put in allegations on explaining why it's plausible that he faces an imminent risk of injury. He can't do that until later when he has an expert testify that that increases his risk of identity theft. The type of facts that my colleague was referencing during his arguments, that someone could use the numbers for a fishing expedition or that it's possible to do a distributed guessing attack, we don't think there's any evidence that you could do that with the first six and the last four. Well, that's for the experts to say. But he has to make those allegations in his complaint, even at the pleading stage. And the critical point is that this case wasn't resolved even at the pleading stage. This got to the point of class settlement and class certification, and this Court made very clear in Prado-Steinman that for a class to be certified, there needs to be Article III standards. But Prado, that was a contested class certification, number one. And number two, our Court remanded it for factual development. Yes, Your Honor. So the plaintiff always has the affirmative burden of both alleging facts and then later proving that he is standing, even if it's not contested. The only circumstance in which a factual contest would change the calculus is if we are claiming that facts he's alleged are not true, that there's a factual dispute as to their veracity. But he hasn't overcome the very first hurdle, which is alleging the facts and then putting them into evidence. And I don't think that that can be excused by the fact that this was not actively contested until by the claim this was an actively contested public fairness hearing for a couple of reasons. One, the guidance in his answer especially raised the lack of injury in fact as inferred with defense. Two, throughout the entire litigation in district court, they said the reason they were settled in this case, one of the primary reasons, was because Spokio called the question they're standing. So they knew this was a risk. And I know of no case suggesting that plaintiffs are free to argue. I mean, my point was just that I don't think Prado helps you. May I ask another question? So I think, you know, what I'm thinking about is the opinion this Court's going to write and how we get that right. So I think you agree with me that Spokio requires the Court to determine the material risk of harm, right? Yes. So what guide, I mean, if the Court determines that a 25% risk of harm is enough, is that, I mean, is that consistent with your view or does it need to be more than that or what is it? I think there are two guideposts to the sort of percentage you need. One is that in Clapper, the Court said an objectively reasonable likelihood isn't enough. It needs to be certainly impending. And another is in this Court's opinion in Corbett. But Clapper was not a concreteness case. Yes, but imminence is always a requirement. Well, but, I mean, there was no statute in Clapper that the Court was relying on for the harm finding. But I think the best reading of the Court's opinion in Spokio is that material risk was another way of, was a gloss, as you said, on the word imminent. Okay, so 25%, is that enough? I don't think that would be enough, Your Honor. I think it needs to be certainly impending. What is, what's, percentage-wise? In the Corbett v. TSA case, if I may, the Court did actually discuss percentage likelihoods that were too low. And it said, for example, 1.7% likelihood of a harm occurring. But you say 25% is not enough. So I think that in this case, I think that where exactly we should wait for a case that actually comes close to the border, in this case, we're at zero examples ever out of millions of claims and no example out of the 300,000 supposed harmed persons in this case. So I think that we're excellent. So far, we're at 1.7%. We don't need to worry about drawing more. Thank you, Mr. Wright. Mr. McDonnell, you have the last two minutes. Thank you. As I understand it, a lot of Moravskis are harmed. There can never be a fact claim. There is 0% chance no one could ever prove a fact case. And he's asking this Court to basically gut fact in its entirety. Isn't he just saying that instead a plaintiff needs to make factual allegations in his complaint that would support standing? Which is different, I think. That may be what he's saying, but if you were to challenge those factual findings, I think I just understood the counsel to say that there is a 0% chance. I think he said 0% because there's nothing in the complaint. Yes. Not because it's a claim that can never exist. No, that's right. Is your argument as soon as I get an untruncated credit card receipt back, I've sustained a risk of harm that Congress has identified as a harm that we're seeking to protect on behalf of consumers? Yes. And I think that that's shown by the fact that the way that Congress established the two ways that one can obtain monetary relief, one is for actual damages. The other specifically says that if there are no damages, then you can get statutory damages of $100 to $1,000 if the violation is proved to be willful. If Congress has said the last two numbers is too much, then would we be bound to find injury wherever a receipt went out with the last two numbers? I don't think it's the position of courts to rewrite Congress's law. I guess I'd have a hard time answering that hypothetical without knowing more about just the last two digits and what those numbers mean. But I think that— Could Congress determine that if you print more than one or two numbers on a credit card receipt that that increases your risk of identity theft? I mean— That might be part of the process for the merchants and for people to take that issue before Congress and to come up with the right resolution for that. I think that's basically the process that we have. Congress could be right about that or wrong about that, but that's within the prerogative of Congress. Is that how you would answer the question? Thank you, Mr. McDonald. We'll take that case under submission. All rise. Thank you.